Jr. We have Mr. Heller. Come on up, Mr. Heller. That chair's for you, right there. All right, Mr. Lane, I see you reserved two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. May it please the Court, my name is Mark Lane. I represent the plaintiff appellant Elizabeth Berardi. Your Honors, the plaintiff and defendant in this case are former spouses. They were married for 30 years. They were divorced in 2009. In the divorce, the matrimonial court applied and enforced a post-nuptial agreement between the parties that allocated shares in the family business, 49% to Elizabeth and 51% to Eugene. That's the current ownership of those companies, of three operating companies that are primarily the focus of this case. All of the shares in those three operating companies are subject to shareholder agreements. Those shareholder agreements all contain restrictions on transfer, pretty much standard rights of first refusal that require either party, if they wish to transfer any of their shares, to offer them first to the company, then to the other shareholder. Those rights of first refusal expressly prohibit it. Why is there a live case of controversy before us, given that Mr. Berardi says he's going to comply with the shareholder's agreement? Your Honor, respectfully, he doesn't say that. In fact, he says exactly the opposite. He has submitted a sworn declaration even confirming what he said before this case was started, that he expressly intends to transfer his shares. Well, he said that the New York probate court would have to uphold it, right? Well, yes. He has said if it's determined valid at the time, which to me has no legal effect. I mean that's like saying you can just wait until I breach and then sue me. If that was a defense to these causes of action, there wouldn't be such a thing as a breach. Now, wouldn't the probate court determine this contractual issue that you're raising here? That couldn't be raised, couldn't that be raised in the probate? It could be, as any breach of contract could be raised after the breach. Well, let me ask you, even before you get to that, first of all, he hasn't even changed his will yet, right? So he has a present intent to change his will. There's no evidence that he's actually put his son, Alex, in the will, right? Our understanding is that he has changed his will. What is that? Where is that in the complaint? I thought you're citing his declaration where he says that's my present intent, not that he's done it already, right? Fair point, Your Honor. Some of the things we have said or learned during the course of this hearing. All right, so you don't know that he's changed the will. I don't know that. Your client has to outlive Eugene, otherwise this is never going to come up, right? Correct. She has to be able to exercise the right of first refusal at the time of his death. We don't know if that's going to happen or not. There's a lot of, in other words, there's a lot of, we can go through each one and look at how contingent it is. But the bottom line is the district court listed all the contingencies that exist now. And the question is, like, why not wait? Because contingencies do not defeat these kinds of claims. Almost any— Well, under New York law, the intent has to be positive and unequivocal, definite and final. And the things that we discussed hardly suggest that his intent is positive and unequivocal when he says I have a present intent to do that. And it's not definite and final because there's a lot of things that have to happen to make this definite and final before your client would suffer a harm. I think we have to parse the intent question from the contingency question. The present intent is absolutely crystal clear. He has put it in a sworn affidavit filed with the district court. Whether there are contingencies is not— He says in his affidavit, to be clear, I agree that I may only sell or transfer my shares during my lifetime in compliance with the shareholder agreements. What he doesn't agree with is the part of the shareholder agreements that prohibit transfer by testamentary bequest. He expressly states that he has an unequivocal present intent to do that. I presently intend to leave my shares to my son, Alex, by testamentary bequest, if such a bequest is determined to be valid at the time of my death. Right, and that's the same thing as saying I'm going to breach the contract and you can sue me after I breach the contract. But this court and the Supreme Court have repeatedly held that the Declaratory Judgment Act exists in these kinds of cases to prevent, quote, avoidable damages. That's why we have these causes of action. If it was a defense to these causes of action that you can just wait and sue me later, these causes of action wouldn't exist. There wouldn't be such a thing. What's the damages your client's incurring right now? If this case waited, what damages is your client incurring? She's incurring a complete inability to plan her life. She's also incurring the loss of the one value, the one asset of the greatest value that she has, her rights in these companies, are being taken away from her. This is the one thing that she got out of the divorce. Nothing is being diminished. Her rights haven't been diminished at all right now. The only issue of whether they'd be diminished would occur at the time of his death if all these other contingencies sort of fall into place. But her rights haven't been diminished. Her rights are diminished if he has a will and states and or states that he intends to transfer his shares outside of the rights of first refusal. That is her right. Aren't we all in that position? I mean, we don't know what's going to happen in the future in terms of our assets and et cetera. That's true, Judge Chin. We don't. Yeah, we don't. So, I mean, how is – why is her injury or prospective injury more concrete than anyone else's? Because it has been made concrete by the defendant in his expressed statements of his intention to breach these contracts. I don't see how you can say that the fact that there might be – there's always contingencies. This court and the Supreme Court have held contingencies don't defeat a DJ claim. There's always contingencies. You could get run over by a bus saying I could change my mind. I'm going to breach the contract, but I could change my mind, so therefore you can't sue me. That doesn't work. If you say I'm going to breach the contract, there's a cause of action for anticipatory breach. If you say the contract is void and unenforceable, there's a cause of action for the current breach. The Supreme Court has said a claim is not right for adjudication if it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all, and that seems to be exactly what we have here. We have events that may not occur at all, the most basic one being if she doesn't outlive Eugene, this case that you've brought is not going to – this dispute is never going to happen. Statistically, she probably will. The odds are in favor of her, but there's always contingencies, Judge, and the standard under this court's decision in admiral insurance is not whether or not something might never happen. The standard is is there a practical likelihood that it will. That's this court's language. And when the defendant has expressly stated that he will do this, he will do it, then there's a practical likelihood that it will happen. Does he say that he will do it? He does in his affidavit. Where does he say in his affidavit that he will do it? I don't have the affidavit right in front of me, Your Honor. It's only a couple of pages long, but he says in there, I presently have an intent to transfer my shares to my son by testamentary request. That's a statement of present intent. If permitted, if determined to be valid. That's the clever language that he added that I'm saying doesn't have any legal meaning because there's always a possibility that you can wait for a breach and then sue, and if the breach is then determined to be a breach, okay, fine, it was a breach of contract. But that doesn't mean you don't have a cause of action for a declaratory judgment or anticipatory breach prior to the breach. You don't have to wait. That's what the Supreme Court has said. You don't have to wait to be injured. You can sue now. That's the purpose of the DJA. All right. Thank you, Mr. Lee. We have two minutes in the rebuttal. We'll hear from Mr. Heller. Good morning, and may it please the Court, my name is Justin Heller, and I represent the defendant appellee, Gene Berardi. I really just wanted to highlight a couple of points this morning with respect to both the declaratory relief claim and the anticipatory breach claim. With respect to declaratory relief, we think the Court was 100% correct in concluding that the dispute is not ripe and the Court lacks subject matter jurisdiction. The plaintiff's concern simply lacks the requisite immediacy and reality for declaratory relief. It could be decades before the issues that the plaintiff is concerned about. How do you respond to the argument that she can't engage in her estate planning with these uncertainties? I think it's really, at one level, highly speculative, the claim. That claim is highly speculative. It's not speculative in the sense that she can't proceed with it, making any plans. Fair enough. But the bottom line, I think, is she'd still be subject to the same contingencies, whether or not declaratory relief is granted. She'd still have to plan around the fact that she could die first. She still has to plan around the fact that the companies could be sold during Mr. Berardi's lifetime, in which case both shareholders would receive the benefit of their shares, and that would really be the end of the issue. And I think when it comes to immediacy and reality, those potential future events are just so far removed that it's outside the scope of immediacy that's needed for these types of cases. So your position is that that claim would not be right until your client passed away? I think that's correct, because he has not. But that would take away the idea of anticipatory breach altogether then, because at that point, right, that's essentially waiting for the breach, right? Well, there would never be a breach, because in the context of an anticipatory breach, inherent in Mr. Berardi's bequest and his will to leave his shares to his sons is the qualification that it would have to be upheld by the probate court. Mrs. Berardi can always contest that. So his present intent is not a breach. This is a lot different than the typical anticipatory breach claim. So I think you're saying that the will would have to be submitted to probate court and the court were he to die, and then the court could determine then whether this was a valid bequest or not. Right. If it's a valid bequest, she has suffered no harm. If it's not, then the shares don't go to Alex, and there's no harm either way. And in both the declaratory relief and the anticipatory breach context, there has to be harm. There's no harm here. Is there a will in place? His affidavit is a little bit ambiguous. There is a will in place that leaves the shares to Alex. But, again, that's not a breach. A breach would be if he transferred the shares. He hasn't transferred the shares. You know, a will is just an intent. Where is it in the record? I didn't see that in the record, that it's in the will. I thought there was the declaration that says it's my present intent, but it's in the record? I mean, Judge Tinn asked me. I'm answering the question whether it's actually explicitly in there. But his declaration didn't say I've changed the will, but it uses this phrasing of present intent. But you're saying that, in fact, that has happened? Yes. But, again, all that means to me is the present intent is really no different than what's stated in the declaration. How do we know that there's a will? How do we know that other than that you've just answered a question? I think it's not in the record. It's your personal knowledge. Yes. Ask counsel. Exactly. I mean, I'm, you know. You're answering my question, which might not have been a fair question. No, it's fine, because I don't think it has any impact on the outcome. Because, again, it's just, it's all qualified by whether it's, inherent in even putting in his will is the notion that it's only, it only happens if it's approved by the probate court. He has not breached the shareholder's agreement. He's only going to transfer the shares if he's permitted to do so at the time of his death. I mean, the other harm that Mrs. Berardi cites is that it would be, you know, disruptive to the companies at the time of his death if there's uncertainty over the ownership of the shares. But that's clearly speculative, and there's no reason to assume that there wouldn't be good management in place for the companies while the ownership is being sorted out. And, you know, in declaratory relief cases, the harm has to be actual or concrete. And I just think, you know, that doesn't exist here, because, again, plaintiff could always challenge the will in probate court, and any transfers in violation of a transfer restriction or void ab initio, I don't think her inability to, you know, do her own financial planning or state planning is really the kind of harm that's required here. And, again, she's still subject to the same contingencies, whether there's declaratory relief or not. On the subject of anticipatory breach, you know, it requires an unqualified, definite, and final communication of an intention not to perform. And here, again, there's a huge qualification because the transfer would have to be approved by the probate court. That's, you know, that falls far short of what's required in anticipatory breach cases. In other words, maybe the question here, the situation here, is that she's moved by her perception of a danger that something will happen, not something that has happened or must happen. It's, we're all, we're all, I'm certainly fearful of a lot of things, of things that companies, whose shares, a few shares I might own, I'm afraid they'll do something. But fear is not enough. There has to be something more than fear. There has to be an actual danger. I think that's 100% accurate, Your Honor, and I think that's applicable to both her request for declaratory relief and anticipatory breach. Beyond that, I, unless there's further questions from the court, I would rest on my brief. All right. Thank you, Mr. Howell. Thank you so much. Mr. Wayne, you have two minutes in rebuttal. Thank you. So first, Mr. Howell says that the claim that the defendant will breach the contract is purely speculative. I just don't see how you can come to that conclusion when he has stated under oath that he will breach the contract. Now, can we challenge it at the time he dies in the probate court? Yes. Why should we have to? We don't, that's not enforcing the purpose of the DJA, which is to prevent avoidable damages. The underlying issue in this case. I'm afraid, just listening to your recitation of it, I wonder how broad a rule that is that if it's going to, you know, I have to prevent something bad from happening because if it happens, I'm going to be in trouble. And there's got to be a line at which you cross over from Jesus. I'm afraid he's going to do something. He's told me he's going to, indirectly, he's going to do something. And I'm afraid of that. Is there a line? Where does one draw the line between that and actually having a cause of action as though he has done it? That's certainly a fair question, Judge Sack. I mean, there certainly must be a line. And it's not just that you can sue because you think something is going to happen. I think the line is between you and your adversary. Well, usually there's no, there's not multiple contingencies between that intent and the harm, which is what we have here. Usually in a typical D.J. actions, I intend not to pay you under the contract. So there you have someone saying, I'm not going to pay. And someone thinks that's a breach or they anticipate that will be a breach. But there's no other things that are going to happen. The person is not going to pay. Whereas here, as we've gone through, I won't go through them again, there's a lot of other things that have to happen for this dispute to have to be resolved by a court. Well, there's all kinds of contracts, of course. And many contracts have conditions, precedent, and contingencies built into them. And that doesn't mean that when the other side says, I will breach that you can't have a claim for a declaratory judgment. Is it at that point that the cause of action is created for anybody to know that happens? That's kind of where I was going to, is that the line clearly has been crossed here. It's not speculative. The line must be where there is a clear intent, an expression of intent, which we have here, a clear and express intent to breach the contract. Then it's no longer speculative. It's no longer on the speculative side of that line. I don't know where the line might be drawn in every case, but certainly the line is clear here. It's where the defendant has said, I will breach. I don't know what an anticipatory breach claim is if it's not a claim that says the defendant says he will breach. It's clear cut here. All right. Thank you, Mr. Lane. Thank you, Mr. Keller. We'll reserve decision. Have a good day. Thank you. That completes the business of the court today. Thanks to Ms. Molina.